UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MAURICE RHOADES, | ) | CASE NO. 1:07 CV 0802 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | |
| OHIO CIVIL RIGHTS COMMISSION, | ) | |
| et al., | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| Defendants. | ) | |

On March 19, 2007, plaintiff pro se Maurice Rhoades filed the above-captioned in forma pauperis complaint against the following employees of the Ohio Civil Rights Commission (OCRC): Delores L. Wilkerson, Housing Investigator, Vera F. Boggs, Cleveland Regional Supervisor, Iris M. Choi, Regional Director, Lynne D. Geib, Mediator, Cortney Calhoun, Akron Regional Director, Leon Adams, Ombudsman; employees of Donshirs Development Corp.: Nayyir Mahdi, Stacy Stoutermire, Stacy Anban and Mahdi Associates LTD; Blue Chip Property Management Inc. employees: Renee Tracy, Julius Cartwright and Mayronk Haynes, as well as G. R. Green employees: Greg R. Green, Lennie Miller, and Linda Miller. Mr. Rhoades asserts this court's jurisdiction pursuant to the Civil Rights Act of 1983, the Fair Housing Amendment Act of 1988, breach of contract and "all other related statutes of Discrimination." (Compl. at 5.) He seeks $50,000.00 in compensatory damages from each

defendant, as well as unspecified punitive damages.

*Background*

Mr. Rhoades telephoned Stacey Stoutermire on August 8, 2006 after seeing a "For Rent" sign on the lawn of an apartment located at 12528 Forest Avenue in Cleveland, Ohio. She assured Mr. Rhoades that the apartment was available and promised to return his call that afternoon with more details. When she failed to call back that day, plaintiff called her again. She explained that she "was trying to arrange a group of prospective renters, in order, to show one, two, and three- bedroom apartments at said site." (Compl. at 6-7.) Again, she promised to call him back the same day and did not.

Two days after viewing the rental sign, Mr. Rhoades telephoned Ms. Stoutermire's office again and "an unidentified middle-aged African-American woman (Ms. Stacy Anban) answered Plaintiffs' [sic] telephone call and she stated to plaintiff not to call their office again', and hung up." (Comp. at 7.) It was after this telephone exchange that plaintiff concluded that "Defendants' did conceal their discrimination in a sophisticated behavior so that it was not obvious. Still more, Plaintiff argues the fact to the Court that Defendants' never intended to rent to Plaintiff." (Comp. at 7.)

Mr. Rhoades filed a "Housing Discrimination complaint" with the OCRC against Donshirs Development on September 6, 2006. Although the defendant chose not to participate in an Alternative Dispute Resolution of the matter, it did submit a Position Statement on or about November 23, 2006. In the Statement, Donshirs explained that two of its staff members had medical emergencies on August 8, 9 and 10, 2006. It the opinion of Mr. Rhoades that these "alleged excuses . . . prevented Defendants' Donshirs Development Corp. from allowing Plaintiff

2

to complete an application and view the prospective apartment in August 2006." (Compl. at 8.) He asserts that he "refuted" the defendant's "false story" to Ms. Wilkerson, Ms. Boggs and Ms. Choi. As a consequence, he maintains that these employees should have complied with his "demand" that they "secure doctor, and/or hospital documentation" from the defendant to support their version of the facts. Instead he claims the OCRC employees acted with prejudice and bias when they "refuse[d] to verify Defendants' Donshirs Development Corps'. fabricated story. Thus, they failed to do their duty." (Compl. at 8.)

The OCRC employees also allegedly "retaliated" against plaintiff for "calling their fake investigation shallow and superficial." (Compl. at 9.) As 'evidence' of their alleged bias, Mr. Rhoades refers to a letter from Vera Boggs, dated December 14, 2006, wherein she reached a "decision to unreasonably and constructively discharge Plaintiff's Housing Discrimination complaint." (Compl. at 9.) In her letter she concluded the "[p]laintiff was denied because when he was informed that there was no manager available at that time to show the unit, he called back within two hours and became rude and discourteous by using profanity and speaking to Ms. Stoutermire in a threatening voice in a later conversations [sic]. The Plaintiff has displayed the same behavior with staff." (Compl. at 9.)

On the same date Mr. Rhoades saw the property on Forest Avenue he saw another rental sign on the lawn of a property located at 2912 East 126th Street. After also receiving a printout of available properties from "Housing Cleveland.Org." he telephoned G. R. Green regarding the East 126th Street apartment and telephoned Renee Tracy at Blue Chip Property Management Inc. to set up an appointment to view two apartments of interest that were listed on the printout. No one answered the telephone for G.R. Green so he left a voice message.

3

Ms. Tracy allegedly failed to show up for a scheduled appointment with Mr. Rhoades on August 14, so he telephoned her again the following day. She allegedly "field[ed] the telephone call" and stated that her father had a stroke and she would need to reschedule their appointment. "Plaintiff knew that she was lying to him." (Compl. at 13.) He rescheduled the appointment for the following day and, again. Ms. Tracy did not show up. Mr. Rhoades never reached anyone at the G. R. Green number, but claims he called repeatedly between August 8, 2006 through September 15, 2006.

On September 6. 2006, Mr. Rhoades filed "Housing Discrimination complaint[s]" with the OCRC against both Blue Chip Management and G. R. Green. While Blue Chip provided a Position Statement alleging that Ms. Tracy had a medical emergency on the dates of their scheduled appointments, G. R. Green did not choose to participate in the Alternative Dispute Resolution process. Mr. Rhoades was not satisfied with the response provided by Blue Chip and made repeated demands to the OCRC to compel Blue Chip to provide verification of the claims the company made. He also made repeated requests to Delores Wilkerson to have G. R. Green provide a position statement, to no avail.

Mr. Rhoades was increasingly frustrated by OCRC's failure to demand verification from Blue Chip regarding its "false story." Therefore. in an effort to resolve the matter to his satisfaction, he "discarded the fact that Defendants' Blue Chip Management Inc.'s and Defendant Ms. Renee Tracy was [sic] lying straight to his face" and met with the OCRC, mediator Lynn Geib, and Blue Chip management to negotiate a "Written Contract" on October 10, 2006. However, after leaving the offices of OCRC the defendants allegedly breached the contract by failing to appear at 4:00 pm the following day at 3378 East 139th Street so Mr. Rhoades could

4

view an apartment. When he contacted Lynn Geib the following day, she and every OCRC employee "did all vehemently deny the existence of the aforesaid Written Contract. Which demonstrates to the Court their bias and prejudice against Plaintiff. Plus, their negligence, gross dereliction of duty, Breach of Written Contract and their violation of 42 U.S.C. § 1983 - Civil Rights. [sic] And the Fair Housing Amendments Act of 1988." (Compl. at 17.)

Finally, on November 20, 2006 Mr. Rhoades requested that Ms. Wilkerson subpoena a statement from Green pursuant to "Agency Rules, Practices and Procedures. Plus, their Standard Operating Procedure." (Compl. at 25.) Plaintiff maintains that her lack of effort to provide an update regarding an investigation of his complaint "was not acceptable. Plus, the fact that her work, or lack of work, did discriminate against Plaintiff. And, in reality, the result of her lack of work did help and embolden Defendants' G. R. Green." (Compl. at 25-26.)

At some point in November 2006, Mr. Rhoades asked OCRC Ombudsman Leon Adams to assist him in getting a position statement from G. R. Green. Plaintiff argued that "time was at a premium, due to the holiday season. Plus, the fact that his present Landlord was troubling him." (Compl. at 26-27.) Mr. Adams advised plaintiff to telephone Ms. Wilkerson because "'he was not going to manage the Investigation'." (Compl. at 27.)

On December 12, 2006, a letter from Ms. Wilkerson was received by Mr. Rhoades wherein she allegedly stated that the Housing investigation claim could not be completed within 100 days from filing because it was impracticable and that she needed to (1) issue a subpoena, (2) conduct an investigation, (3) attempt conciliation and (4) write a report. Less than one month later, for reasons not explained in the complaint, Mr. Rhoades allegedly received two letters from Johncie L. Kanney of the OCRC's Compliance Department. These alleged letters, both dated

5

January 4, 2007, recommended to the OCRC "[t]hat Defendant Ms. Vera F. Boggs - Cleveland

Regional Supervisor's two December 14. 2006 - original letters' of determination of the Ohio

Civil Rights Commission be set aside and vacated at the next Commission meeting for the

purpose of conducting a further review of the recommendation of the Cleveland regional office.

Concerning Plaintiff's two Housing Discrimination Complaints'." (Compl. at 27.) In response

to her letters. Mr. Rhoades telephoned Ms. Kanney to thank her and explain the problems he was

having with Ms. Wilkerson and Ms. Choi.

Ms. Wilkerson telephoned Mr. Rhoades directly on January 19, 2007 to explain

that she had spoken with Mr. Green "who informed me that he is the occupant, manager and

operator of the four - suite building located at 2912 East 126th Street Cleveland Ohio 44120."

(Compl. at 29.) She provided the following explanation after her conversation with Mr. Green:

> He said approximately in March 2006. a vacancy occurred
> in the building and eventually he placed a rent sign in the
> front yard. The sign remained for a period of time. but due
> to his unusual works hours, 7:30 a.m. to 10:30 p.m.. he
> was not doing a good job of refurbishing the unit for rental
> nor was he returning interested parties['] inquiries. He
> says this may have included you. Eventually the sign was
> removed and the unit not has never been rented to anyone
> disabled or not disabled. It still remains vacant and he
> currently has another vacant unit. . . . He says that you are
> quite welcome to contact him and make arrangements to
> see the unit. . . . . Failure to accept this as a full remedy to
> your complaint will result in a no probable cause recommendation for the following
>
> 1. Although Mr. Green does not remember you. he admits that it
> is possible your call was not returned as well as other individuals.
>
> 2. He never spoke to you, nor has he met you and he had no idea
> at that time if you were disabled or not.

6

3. The unit has not been rented to anyone.

(Compl. at 29-30.) Mr. Rhoades objected to what he perceived as Ms. Wilkerson's "arbitrary, biased, prejudiced and unfair demand. That he accept Defendant's G. R. Green's offer to see the unit by Friday, January 26, 2007." (Compl. at 30.) He retorted that "she was clearly condescending to him. And clearly attempting to adversely maneuver him." (Compl. at 30.) Mr. Rhoades "refuted" all of Mr. Green's claims as unreasonable and "demanded that Defendant Ms. Delores L. Wilkerson and Defendants' Ohio Civil Rights Commission, obtain Defendant Mr. Green's time cards and pay stubs' [sic] dated from August 8, 2006 - up until January 19, 2007." (Compl. at 31.)

Finally, on March 1, 2007, OCRC Regional Director Iris Choi sent a letter to Mr. Rhoades wherein he claims that she stated, in relevant part:

> 'Complainant has failed to provide any documentation to prove that Respondent knew of his disability. Respondent does not remember speaking to or meeting with Complainant. The unit has not been rented. In addition, the Respondent has agreed to allow the Complainant to view the property and he has refused to accept this offer.'
>
> DECISION
>
> Upon investigation, the Ohio Civil Rights Commission has determined that the Complainant has Failed to Accept full Remedy (X-8)'

(Compl. at 34.) Mr. Rhoades argues that this letter is sufficient evidence that the OCRC and its employees failed to investigate G. R. Green's position statement. He claims these defendants "behaved erratically, irrationally, tortuously, and negligently. And to Plaintiff's detriment and injury. Wherefore, Plaintiff has proven a willful, wanton, and a malice of forethought, bias and prejudice by Defendants' Ohio Civil Rights Commission. Pursuant to 42 U.S.C. § 1983 - Civil

Right; the Fair Housing Amendments Act 1988, and all other related statutes of Discrimination."
(Compl. at 36.)

*Standard of Review*

Although <u>pro</u> <u>se</u> pleadings are liberally construed, <u>Boag v. MacDougall</u>, 454 U.S. 364, 365 (1982) (per curiam); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), the district court is required to dismiss any claim under 28 U.S.C. §1915(e) if it fails to state a basis upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989); <u>Lawler v. Marshall</u>, 898 F.2d 1196 (6ᵗʰ Cir. 1990); <u>Sistrunk v. City of Strongsville</u>, 99 F.3d 194, 197 (6ᵗʰ Cir. 1996). For the reasons stated below, this action is **partially dismissed** pursuant to section 1915(e).

*Civil Rights Act*

To prevail in a civil rights action under 42 U.S.C. §1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the constitution and law of the United States. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986). Section 1983 alone creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n. 3 (1979). The statute applies only if there is a deprivation of a

---

[1]    A claim may be dismissed <u>sua sponte</u>, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. <u>McGore v. Wrigglesworth</u>, 114 F.3d 601, 608-09 (6ᵗʰ Cir. 1997); <u>Spruytte v. Walters</u>, 753 F.2d 498, 500 (6ᵗʰ Cir. 1985), <u>cert. denied</u>, 474 U.S. 1054 (1986); <u>Harris v. Johnson</u>, 784 F.2d 222, 224 (6ᵗʰ Cir. 1986); <u>Brooks v. Seiter</u>, 779 F.2d 1177, 1179 (6ᵗʰ Cir. 1985).

constitutional right.  See e.g.. Paul v. Davis, 424 U.S. 693, 699-701(1976); Baker. 443 U.S. at 146-47.  Thus. "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States.  Baker, 443 U.S. at 140.

Courts have held that an Equal Employment Opportunity Commission (E.E.O.C.) determination of reasonable cause as to a discrimination complaint is non-binding, non-final, investigative and not adjudicative in nature.  See Georator v. EEOC. 592 F.2d 765, 768 (4th Cir.1979) (failure to receive favorable determination does not represents any loss that implicates the Due Process Clause). Therefore. any claimed 'breach of the duty' to investigate does not give rise to a constitutional violation amounting to the deprivation of property or liberty interests because dissatisfied plaintiffs have an alternative to seek redress of the alleged discriminatory conduct by de novo review.  Francis-Sobel v. University of Me., 597 F.2d 15, 17-18 (1st Cir.). cert. denied. 444 U.S. 949 (1979); see Milhous v. Equal Employment Opportunity Com'n. No. 97-5242, 1998 WL 152784 (6th Cir. Mar. 24, 1998); Reed v. E.E.O.C.. No. 96-1275,1996 WL 636171 (6th Cir. Oct. 30, 1996).   While these cases addressed decisions reached by the Equal Employment Opportunity Commission (E.E.O.C.), the same rationale applies to the role of the OCRC with regard to the finality of its determinations.  Due process is satisfied "if there is an opportunity to be heard before any final order of the agency becomes effective." Georator, 592 F.2d  at 769 (citing Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 598(1950)); see also Haines v. Askew. 368 F.Supp. 369 (M.D.Fla.1973), aff'd mem., 417 U.S. 901 (1974) (upholding a hearing procedure that denied a teacher active counsel where findings could not. without a separate hearing, result in punitive action).  Accordingly. Mr. Rhoades cannot sustain his civil rights claims against the OCRC or any of its employees pursuant to §1983.

9

As noted above. in a §1983 action a plaintiff must not only allege "(1) 'that some person has deprived him of a federal right. 'but (2) 'that the person who has deprived him of that right acted under color of state ... law.'" Velez v. Levy, 401 F.3d 75, 84 (2d Cir.2005) (citing Gomez v. Toledo, 446 U.S. 635. 640 (1980). "A private party's actions constitute state action under section 1983 where those actions may be 'fairly attributable to the state.'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 947(1982). The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test. See Wolotsky v. Huhn. 960 F.2d 1331, 1335 (6th Cir. 1992). There is no allegation that Donshirs Development Corp., Nayyir Mahdi. Stacy Stoutermire, Stacy Anban, Mahdi Associates LTD. Blue Chip Property Management Inc., Renee Tracy, Julius Cartwright and Mayronk Haynes. G. R. Green, Greg R. Green. Lennie Miller, and Linda Miller are state actors under any standard recognized by the courts. Thus. Mr. Rhoades's cannot sustain his allegations pursuant to § 1983 against any named defendant in this complaint and, thus his § 1983 claims are dismissed in their entirety.

### The Fair Housing Amendment Act (FHAA)

The FHAA makes it unlawful to: "To discriminate in the sale or rental. or to otherwise make unavailable or deny. a dwelling to any buyer or renter because of a handicap of-- (A) that buyer or renter." 42 U.S.C. § 3604(f)(1)(A). The original FHA was "enacted to address the problem of discrimination by federally funded housing providers." Am. Disabled for Attendant Progs. Today v. HUD, 170 F.3d 381. 387 (3d Cir.1999). After "Congress passed the Fair Housing Act in 1968 to prevent housing discrimination[.] . . . it added the FHAA to include people with physical disabilities" in 1988. Id. at 383. This amendment added disabled people to

10

the classes of people protected "from both public and private housing discrimination, making it unlawful to 'discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter' on the basis of handicap." Id. at 387 n. 10 (citing 42 U.S.C. § 3604(f)(1)).

Unlawful discriminatory housing practices in violation of the FHAA may be brought under three distinct legal theories: "(1) intentional discrimination claims (also called disparate treatment claims); (2) disparate impact claims; and (3) claims that the [defendants] failed to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] person[s][an] equal opportunity to use and enjoy a dwelling." Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Township of Scotch Plains, 284 F.3d 442, 448 n. 3 (3d Cir.2002) (citations omitted); see also ReMed Recovery Care Ctr. v. Township of Willistown, 36 F.Supp.2d 676, 683 (E.D.Pa.1999)("There ... are three distinct types of cases under the FHAA: intentional discrimination, discriminatory or disparate impact, and failure to make reasonable accommodations.").

Construing the facts in Mr. Rhoades's favor, he has arguably stated a claim of discrimination under the FHAA based on his alleged mental disability against some of the defendants. See e.g. Trafficante v. Metropolitan Life I.N.S. Co., 409 U.S. 205, 209, 211-12 (1972) (FHA must be given a "generous construction" to carry out a "policy that Congress considered to be of the highest priority.") He has not, however, set forth any factual allegations establishing, or claiming to bring, his claim under any of the three legal theories. Of the three, however, the facts suggest that he is claiming intentional discrimination. Fowler v. Borough of Westville, 97 F.Supp.2d 602, 612 (D.N.J.2000)("[i]n order to prove intentional discrimination, plaintiffs must

show that the decision to deny them housing opportunities was motivated, at least in part, by their disabilities.") While Mr. Rhoades does not explain how the defendants knew he was mentally disabled or that he meets the statutory definition. a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Mr. Rhoades's complaint alludes to his status as a mentally disabled person and that certain named defendants prevented him from filling out an application for residence because of his disability, and the FHAA prohibits that behavior. 42 U.S.C. § 3604(a). Thus, he alleges that he is a members of a class protected under the FHAA, he identifies a policy that affects only members of that class, and set forth allegations prohibited by the FHAA. See also Swierkiewicz v. Sorema, 122 S.Ct. 992 (2002)(employment discrimination complaint need not contain specific facts establishing a prima facie case under the McDonnell Douglas [ v. Green, 411 U.S. 792 (1973)] framework).

Acts prohibited by the FHAA do not extend to every defendant named in the complaint. however. There are no facts alleged which illustrate that any of the following defendants engaged, vicariously or otherwise, in any discriminatory act prohibited by the FHAA: the Ohio Civil Rights Commission (OCRC): Delores L. Wilkerson, Housing Investigator, Vera F. Boggs. Cleveland Regional Supervisor, Iris M. Choi. Regional Director. Lynne D. Geib, Mediator. Cortney Calhoun. Akron Regional Director. Leon Adams, Ombudsman: employees of Donshirs Development Corp.,Mahdi Associates LTD. Nayyir Mahdi, Stacy Anban, Julius Cartwright and Mayronk Haynes and these defendants are dismissed from this action.

With regard to G. R. Green and its employees Greg R. Green. Lennie Miller, and

12

Linda Miller. the fact that Mr. Rhoades was not satisfied with their initial failure to answer the telephone or the explanation for not returning his calls immediately does not negate their lack of awareness that he is handicapped or the fact that the defendant was willing to show him an apartment, regardless of his handicap. Just as this court is tasked to accept as true Mr. Rhoades allegations, it is not in a position to disregard the defendants' stated position. Thus. Mr. Rhoades has failed to meet his burden of alleging sufficiently that, notwithstanding defendants' offer, they are in violation of the FHAA. Accordingly. G. R. Green and its employees Greg R. Green. Lennie Miller. and Linda Miller are dismissed from this action.

Based on the foregoing. Mr. Rhoades is granted leave to proceed in forma pauperis and his Civil Rights claims against the defendants are dismissed. The court certifies that an appeal from this dismissal could not be taken in good faith.[2] **His claims based on violations of the FHAA and related state law claims, however, shall proceed solely against Donshirs Development Corp., Ms. Stacy Stoutermire, Blue Chip Property Management Inc., and Ms. Renee Tracy.** The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process. The Clerk's Office shall include a copy of this order in the documents to be served upon these defendants.

IT IS SO ORDERED.

*Christopher A. Boyko*

CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT COURT

---

[2] 28 U.S.C. § 1915(a) (3) provides: "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

13